24 C.C.P.A. (Patents)

## In re McFERRAN.
### Patent Appeals No. 3780.

Court of Customs and Patent Appeals.
March 29, 1937.

Arthur F. Robert, of Louisville, Ky. (Joseph W. Milburn, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, GARRETT, and LENROOT, Associate Judges.

BLAND, Associate Judge.

Claims 1, 17, 18, and 19, being all the claims on appeal, of appellant's application for motor-driven food churning devices, were rejected by the Primary Examiner of the United States Patent Office, no claims being allowed. Upon appeal to the Board of Appeals, the decision of the Examiner was affirmed, and appeal has been taken here for review of the decision of the Board.

Appellant's device is a unit to be placed in the freezing compartment of a household mechanical refrigerator after the usual ice cube pans are removed. The unit consists of a receptacle having a stirrer for the ice cream. It is necessary to stir the cream so that the texture will be smooth. The stirrer is driven by an electric motor which is attached to the stirring receptacle and is also inserted into the freezing compartment. The means connecting the motor to the receptacle consists of a pair of arms which, at the ends connected with the receptacle, are downwardly turned in order to fit into lugs on the receptacle. The invention consists in so insulating the connecting parts between the motor and the receptacle that heat generated from the motor will not retard the freezing of the contents of the receptacle. This means consists, first, in insulating liners between the lugs of the downward extensions from said arms in order to prevent transfer of heat from the motor to the receptacle through the arms, and, second, in insulating the supports for the motor in order that the heat from the same will not pass through the bottom of the compartment and into the receptacle.

Claim 18 is regarded as illustrative and reads:

"18. A food churning device of the class described comprising a churning vessel having a dasher, a motor arranged adjacent to said vessel in driving relation with said dasher and connecting means securing the motor and the vessel together as a unit which is adapted for insertion into the freezing compartment of a mechanical refrigerator, said connecting means including insulated portions of low heat conductivity which substantially limit the direct transfer of heat from the motor to the vessel."

The references relied upon are: Simmons et al., 1,763,567, June 10, 1930; Lindsey, 1,936,723, November 28, 1933.

The patent to Simmons et al. is for a freezing unit much like that of the applicant, except for the alleged invention, and which unit is placed in the freezing com-

partment of a mechanical refrigerator. It has a stirrer and a motor and all the elements of appellant's structure except the insulating means for preventing the heat being conducted from the motor to the freezing receptacle. This fact is conceded by all.

The patent to Lindsey discloses a freezing receptacle inside the freezing compartment of an ordinary mechanical refrigerator to which is attached a motor which drives the stirring element in the receptacle, which motor is placed on the outside of the refrigerator, either on the wall or the door, preferably the door, with the insulated door between the motor and the refrigerating compartment of the refrigerator. Lindsey states, among other things, that the object of his invention is "to provide a freezer whose driving motor is located outside of the refrigerator so that its heat will not tend to raise the temperature of the refrigerating chamber or that of the refrigerator unit."

The Examiner and the Board of Appeals were of the opinion that it would not constitute invention over the disclosure of the device in Simmons et al. to provide insulation in the connecting means between the motor and the receptacle in view of the disclosure of Lindsey who had placed his motor on the outside of the refrigerator. This holding is the sole ground of rejection of the appealed claims and presents the sole question here for decision.

It is shown in the record that in devices like that of Simmons et al., for some reason not understood prior to appellant's invention, heat from the motor unit would find its way into the freezing chamber and retard, if not prevent, freezing of the contents of the receptacle. According to the record, whether the heat was deflected from the motor or conducted through certain connecting parts had not been determined prior to appellant's invention. Appellant discovered by experimentation that the objectionable heat was inducted from the motor to the walls of the receptacle through the rigid means for connecting the motor to the receptacle or at least he discovered that when the effect of said inducted heat was avoided, the problem was solved. Instead of taking the motor out of the refrigerator, as did Lindsey, he conceived the notion of insulating the rigid connecting means so that the heat would not be conducted from the walls of the motor inclosure to the walls of the receptacle. Upon constructing a device as aforesaid, he discovered that the device worked properly and that the contents of the receptacle would promptly freeze and that the difficulties encountered with prior art structures had been overcome. Affidavits to this effect were submitted and considered by the tribunals below.

It was the view of the tribunals that Lindsey had solved the same problem. We are of the opinion that Lindsey's solution of the heat problem was wholly different from that of appellant. Appellant's structure is unitary. When not needed, it can be taken out and laid aside. No cumbersome motor on the door of the refrigerator is encountered. A successful unitary plant was sought by Simmons et al. Lindsey did not produce such a structure, but appellant did. It is not thought that placing the motor outside the refrigerator and thus avoiding the heat problem would suggest to any one that the heat was necessarily conducted through the connecting arms and wall portions of the structure, nor would it suggest that insulating these portions would solve the difficulty. Lindsey would have solved the heat problem by placing the motor in a position entirely away from the refrigerator. The fact that there was insulation in the door of the refrigerator of Lindsey would hardly suggest that the small amount of insulation employed by appellant at the critical points, having discovered that the undesirable heat resulted from induction rather than deflection, would likewise solve the problem.

We think appellant has greatly contributed to the art in question, and that indubitably there is enough doubt on the question as to whether or not his contribution required the exercise of the inventive faculty to require application of the usual rule that such doubt should be resolved in favor of the applicant. Under the circumstances, therefore, we are of the opinion that the appealed claims should have been allowed.

The decision of the Board of Appeals is reversed.

Reversed.

HATFIELD, Associate Judge, did not participate in this decision.